UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **Dianne Hensley,**<br><br>              Plaintiff,<br><br>v.<br><br>**Gary L. Steel**, in his individual capacity and in his official capacity as Chair of the State Commission on Judicial Conduct; **Ken Wise**, in his individual capacity and in his official capacity as Vice Chair of the State Commission on Judicial Conduct; **Carey F. Walker**, in his individual capacity and in his official capacity as Secretary of the State Commission on Judicial Conduct; **Clifton Roberson**, **Kathy P. Ward**, **Wayne Money**, **Andrew M. Kahan**, **Tano E. Tijerina**, **Chace A. Craig**, **Sylvia Borunda Firth**, **Derek M. Cohen**, **Yinon Weiss**, and **April I. Aguirre**, each in their individual capacities and in their official capacities as Members of the State Commission on Judicial Conduct,<br><br>              Defendants. | Case No. 6:25-cv-595 |

## COMPLAINT

Plaintiff Dianne Hensley serves as a justice of the peace in McLennan County. She has held this office since January 1, 2015. As a justice of the peace, Judge Hensley is authorized by Texas law to officiate marriage ceremonies. *See* Texas Family Code § 2.202(a).

After the Supreme Court invented a constitutional right to homosexual marriage in *Obergefell v. Hodges*, 576 U.S. 644 (2015), Judge Hensley continued to perform

marriages for opposite-sex couples. But Judge Hensley was unwilling to officiate weddings of same-sex couples on account of her Christian faith, which teaches that homosexuality is a sin and that marriage exists only between one man and one woman. Judge Hensley was also unwilling to perform homosexual marriages because the law of Texas continues to define marriage exclusively as the union of one man and one woman, and Texas has refused to amend its marriage laws in response to the majority opinion in *Obergefell*. *See* Tex. Const. art. I, § 32 ("(a) Marriage in this state shall consist only of the union of one man and one woman."); Tex. Family Code § 6.204(b) ("A marriage between persons of the same sex or a civil union is contrary to the public policy of this state and is void in this state."); *see also Texas v. United States*, 945 F.3d 355, 396 (5th Cir. 2019) ("The federal courts have no authority to erase a duly enacted law from the statute books" (citation and internal quotation marks omitted)). So Judge Hensley decided to recuse herself from officiating at same-sex weddings — which remain illegal under the laws of Texas — and politely refer same-sex couples to other officiants in McLennan County who are willing to perform these ceremonies.

When the State Commission on Judicial Conduct learned of Judge Hensley's practices, it opened an investigation. The Commission's investigation culminated in a "public warning" that declared Judge Hensley in violation of Canon 4A(1) of the Texas Code of Judicial Conduct, which states: "A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge . . . ." Exhibit 1. Judge Hensley stopped performing weddings entirely in response to the Commission's investigation and threats. She also sued the Commission and its members in state court, claiming that the Commission's actions violate her rights under the Texas Religious Freedom Restoration Act. *See Hensley v. State Commission on Judicial Conduct*, 692 S.W.3d 184 (Tex. 2024). The state-court litigation remains ongoing.

On October 24, 2025, the Supreme Court of Texas unanimously adopted a comment to Canon 4 of the Texas Code of Judicial Conduct that says:

> It is not a violation of these canons for a judge to publicly refrain from performing a wedding ceremony based upon a sincerely held religious belief.

Supreme Court of Texas, Misc. Docket No. 25-9082 (attached as Exhibit 6). This comment disavows the Commission's interpretation of Canon 4A and leaves it without any neutral and generally applicable state law that it can use against Judge Hensley over her refusal to perform same-sex marriages for sincere religious reasons.

The commissioners, however, are refusing to acquiesce to the new comment to Canon 4. Instead, the commissioners have taken the astounding position that Canon 4A(1) *continues to prohibit* Judge Hensley from performing marriages for opposite-sex couples while recusing herself from same-sex weddings on account of her Christian faith. According to the commissioners, the new comment to Canon 4 merely allows judges with religious objections to homosexuality to publicly refrain from performing *all* marriages, and provides no protection to judges who opt out of performing same-sex marriages while continuing to officiate weddings for opposite-sex couples.[1] So Judge Hensley is facing the same threats of disciplinary action that she faced before the new comment to Canon 4, and she is unable to resume performing weddings for opposite-sex couples without exposing herself to investigation and retaliation from the commissioners.

---

1. *See* Exhibit 7 at 2–3 n.1 ("The comment only gives a judge the authority to "opt out" of officiating due to a sincere religious belief, but does not say that a judge can, at the same time, welcome to her chambers heterosexual couples for whom she willingly offers to conduct marriage ceremonies."); *id*. at 30 ("[T]he comment only states that judges may decide not to marry people based on a religious objection—it does not state they may also choose to marry other people if that decision results in apparent discrimination that could 'cast reasonable doubt on the judge's capacity to act impartially as a judge[.]'" (quoting Texas Code of Judicial Conduct, Canon 4, cmt.)); *see also* Exhibit 8.

The commissioners' obstinance violates Judge Hensley's federal constitutional rights under the Free Exercise Clause, and Judge Hensley sues for damages as well as declaratory and injunctive relief. *See* 42 U.S.C. § 1983; *Ex parte Young*, 209 U.S. 123 (1908). The commissioners' continued threats toward Judge Hensley are not grounded in a neutral law of general applicability, as the new comment to Canon 4A expressly permits the behavior that Judge Hensley wishes to engage in. So the holding of *Oregon v. Smith*, 494 U.S. 872 (1990), is inapplicable, and the commissioners must demonstrate that the burdens that they are imposing on Judge Hensley's free exercise of religion qualify as the least restrictive means of advancing a compelling state interest. *See Sherbert v. Verner*, 374 U.S. 398 (1963). The commissioners cannot make this showing, because the state of Texas cannot have a "compelling" interest in suppressing behaviors that its laws and judicial canons expressly permit.

The commissioners are also violating Judge Hensley's rights under the First Amendment's Speech Clause. Officiating a wedding ceremony is speech, and the commissioners are preventing Judge Hensley from engaging in this speech unless she agrees to perform homosexual marriages in violation of her Christian faith and in violation of Texas law.

The Court should award appropriate relief and compel the commissioners to pay damages for the lost income that Judge Hensley continues to sustain on account of their unconstitutional actions.

## JURISDICTION AND VENUE

1.  The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.  Venue is proper because a substantial part of the events giving rise to the claims occurred in the Waco division of the Western District of Texas. *See* 28 U.S.C. § 1391(b)(2).

3.    The federal Declaratory Judgment Act (28 U.S.C. § 2201), 42 U.S.C. § 1983, and *Ex parte Young*, 209 U.S. 123 (1908), supply the causes of action for the relief that Judge Hensley is seeking in this litigation.

## PARTIES

4.    Plaintiff Dianne Hensley resides in McLennan County.

5.    Defendant Gary L. Steel is chair of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Chairman Steel is sued in his individual capacity (for damages) and in his official capacity (for prospective relief).

6.    Defendant Ken Wise is vice chair of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Vice Chairman Wise is sued in his individual capacity (for damages) and in his official capacity (for prospective relief).

7.    Defendant Carey F. Walker is secretary of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Secretary Walker is sued in his individual capacity (for damages) and in his official capacity (for prospective relief).

8.    Defendant Clifton Roberson is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Roberson is sued in his individual capacity (for damages) and in his official capacity (for prospective relief).

9.    Defendant Kathy P. Ward is a member of the State Commission on Judicial Conduct. She may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Ward is sued in her individual capacity (for damages) and in her official capacity (for prospective relief).

10. Defendant Wayne Money is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Money is sued in his individual capacity (for damages) and in his official capacity (for prospective relief).

11. Defendant Andrew M. Kahan is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Kahan is sued in his individual capacity (for damages) and in his official capacity (for prospective relief).

12. Defendant Tano E. Tijerina is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Tijerina is sued in his individual capacity (for damages) and in his official capacity (for prospective relief).

13. Defendant Chace A. Craig is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Craig is sued in his individual capacity (for damages) and in his official capacity (for prospective relief).

14. Defendant Sylvia Borunda Firth is a member of the State Commission on Judicial Conduct. She may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Firth is sued in her individual capacity (for damages) and in her official capacity (for prospective relief).

15. Defendant Derek M. Cohen is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Cohen is sued in his individual capacity (for damages) and in his official capacity (for prospective relief).

16. Defendant Yinon Weiss is a member of the State Commission on Judicial Conduct. He may be served at the Commission's offices at 300 West 15th Street,

Austin, Texas 78701. Commissioner Weiss is sued in his individual capacity (for damages) and in his official capacity (for prospective relief).

17.  Defendant April I. Aguirre is a member of the State Commission on Judicial Conduct. She may be served at the Commission's offices at 300 West 15th Street, Austin, Texas 78701. Commissioner Aguirre is sued in her individual capacity (for damages) and in her official capacity (for prospective relief).

## FACTS

18.  Plaintiff Dianne Hensley serves as a justice of the peace in McLennan County, Texas. She has held this office since January 1, 2015.

19.  As a justice of the peace, Judge Hensley is authorized but not required to officiate at weddings. *See* Tex. Family Code § 2.202(a).

20.  The law of Texas prohibits wedding officiants "from discriminating on the basis of race, religion, or national origin against an applicant who is otherwise competent to be married." Tex. Family Code § 2.205(a). But it allows judges and other wedding officiants to discriminate on the basis of sex and sexual orientation when deciding which weddings they will perform. Judge Hensley obeys section 2.205(a) and has never discriminated against any person or couple seeking to be married on the basis of race, religion, or national origin.

21.  Before the Supreme Court's ruling in *Obergefell v. Hodges*, 576 U.S. 644 (2015), Judge Hensley officiated approximately 80 weddings as a justice of the peace.

22.  After the Supreme Court's ruling in *Obergefell*, Judge Hensley officiated four additional weddings that had been previously scheduled before the Court's ruling, and then her office did not book any more weddings between June 26, 2015, and August 1, 2016.

23.  In August of 2016, Judge Hensley decided that there was a need in her community for low-cost wedding officiants because no judges or justices of the peace in Waco were officiating any weddings in the aftermath of *Obergefell*.

24.  Rather than categorically refusing to officiate weddings, and wanting to provide a reasonable accommodation for everyone, Judge Hensley decided that she would resume officiating weddings between one man and one woman, as she had done before *Obergefell*. Judge Hensley also decided to recuse herself from officiating same-sex weddings and politely refer same-sex couples to other officiants in McLennan County who are willing to perform their ceremonies.

25.  Judge Hensley and her staff researched and compiled a list of every officiant they could find for same-sex weddings in McLennan County and its surrounding counties. One of these officiants, Ms. Shelli Misher, is an ordained minister who operated a walk-in wedding chapel three blocks away and on the same street as the courthouse where Judge Hensley's offices are located.

26.  Ms. Misher agreed to accept referrals from Judge Hensley's office of any same-sex couple seeking to be married. *See* Exhibit 5.

27.  Although Ms. Misher charged $125 for her services, which is $25 more than the $100 that Judge Hensley charges for a justice-of-the-peace wedding, Ms. Misher generously agreed to provide a $25 discount to any couple that Judge Hensley refers to her, so that no extra costs were imposed on couples that Judge Hensley referred to her business.

28.  Judge Hensley also made arrangements with Judge David Pareya, a fellow justice of the peace in McLennan County, who has agreed to accept referrals of any same-sex couple who is seeking a justice-of-the-peace wedding. Judge Pareya's offices are located in West, Texas, about 20 miles from Judge Hensley's offices in Waco.

29.  If a same-sex couple asked Judge Hensley's office about her availability to officiate weddings, Judge Hensley instructed her staff to provide them with a document that says:

> I'm sorry, but Judge Hensley has a sincerely held religious belief as a Christian, and will not be able to perform any same sex weddings.
>
> We can refer you to Judge Pareya (254-826-3341), who is performing weddings. Also, it is our understanding that Central Texas Metropolitan Community Church and the Unitarian Universalist Fellowship of Waco perform the ceremonies, as well as independent officiants in Temple and Killeen (www.thumbtack.com/tx/waco/wedding-officiants/)

They were also instructed to hand them a business card for Ms. Misher's wedding chapel, which is three blocks down the street. A copy of that document is attached as Exhibit 2 to this petition.

30.  Judge Hensley's referral system benefitted both same-sex and opposite-sex couples when compared to her earlier practice of refusing to officiate weddings for anyone. It benefitted same-sex couples by providing them with referrals to every known officiant in McLennan County that is willing to officiate same-sex weddings. And it benefitted opposite-sex couples by allowing them to obtain a justice-of-the-peace wedding, because no other judges or justices of the peace in Waco are willing to officiate any weddings after *Obergefell*.

31.  No same-sex couple has ever complained to the State Commission on Judicial Conduct about Judge Hensley's referral system, nor has anyone complained to Judge Hensley or her staff about it.

## THE COMMISSION'S PROCEEDINGS

32.  On May 22, 2018, the State Commission on Judicial Conduct (the Commission) initiated an inquiry into Judge Hensley's referral system after learning of it in a newspaper article. The Commission sent Judge Hensley a letter of inquiry and

demanded that she respond to written interrogatories about her referral system within 30 days.

33.  Judge Hensley submitted her written responses to these interrogatories on June 20, 2018. *See* Exhibit 3.

34.  Judge Hensley explained to the Commission that her Christian faith prohibits her from officiating at same-sex weddings, and for that reason she initially quit officiating weddings entirely after *Obergefell. See id.*

35.  Judge Hensley also explained that her decision to stop officiating weddings created inconveniences for couples seeking to be married in Waco, because no other justices of the peace or judges in Waco would perform *any* weddings in the aftermath of *Obergefell.* The only justice of the peace in McLennan County willing to officiate weddings of any sort post-*Obergefell* was Judge Pareya, whose offices are located in West, Texas—20 miles away from Waco. As Judge Hensley explained:

> Following *Obergefell*, only one of the six Justices of the Peace in McLennan County continued performing weddings and he wasn't available all the time. As far as I am aware, none of the other judges in the county were performing weddings either. Perhaps because my office is located in the Courthouse across the street from the County Clerk's office where marriage licenses are issued, we received many phone calls and office visits in the next year from couples looking for someone to marry them. Many people calling or coming by the office were very frustrated and some literally in tears because they were unaffiliated with or didn't desire a church wedding and they couldn't find anyone to officiate.

*Id.*

36.  Judge Hensley explained to the Commission that she "became convicted that it was wrong to inconvenience ninety-nine percent of the population because I was unable to accommodate less than one percent." *Id.* She therefore began officiating weddings again on August 1, 2016, with the referral system described in paragraphs 24–30.

37.  On January 25, 2019, the Commission issued Judge Hensley a "Tentative Public Warning." *See* Exhibit 4.

38.  The Tentative Public Warning accused Judge Hensley of violating Canon 3B(6), of the Texas Code of Judicial Conduct, which states: "A judge shall not, in the performance of judicial duties, by words or conduct manifest a bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status . . . ." *Id.*

39.  The Tentative Public Warning also accused Judge Hensley of violating Canon 4A of the Texas Code of Judicial Conduct, which states: "A judge shall conduct all of the judge's extra-judicial activities so that they do not: (1) cast reasonable doubt on the judge's capacity to act impartially as a judge; or (2) interfere with the proper performance of judicial duties." *Id.*

40.  Finally, the Tentative Public Warning accused Judge Hensley of violating Article V, Section 1-a(6)A of the Texas Constitution, which allows a judge to be sanctioned for "willful or persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice." *Id.*

41.  The Commission's Tentative Public Warning allowed Judge Hensley to choose between accepting the Commission's tentative sanction or appearing before the Commission. Judge Hensley chose to appear before the Commission, and a hearing was held on August 8, 2019.

42.  At the hearing, Judge Hensley argued that the Texas Religious Freedom Restoration Act protected her right to recuse herself from officiating same-sex weddings in accordance with the commands of her faith, and to refer same-sex couples to other officiants willing to officiate such marriages.

43.  Judge Hensley also argued that the Commission lacked authority to sanction her under Canon 3B(6) because officiating weddings is not a "judicial duty" within

the meaning of the Canon, as the law of Texas authorizes but does not require judges or justices of the peace to officiate at weddings. *See* Texas Family Code § 2.202(a).

44.  On November 12, 2019, after hearing Judge Hensley's testimony, the Commission issued its final sanction and issued a "Public Warning" to Judge Hensley. *See* Exhibit 1.

45.  Unlike the Commission's Tentative Public Warning of January 25, 2019, the Commission's Public Warning of November 12, 2019, did not accuse Judge Hensley of violating Canon 3B(6) of the Texas Code of Judicial Conduct, nor did it accuse Judge Hensley of violating Article V, Section 1-a(6)A of the Texas Constitution. Instead, the Commission declared only that Judge Hensley had violated Canon 4A(1) of the Texas Code of Judicial Conduct, which states: "A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge . . . ." The Commission declared that Judge Hensley:

> should be publicly warned for casting doubt on her capacity to act impartially to persons appearing before her as a judge due to the person's sexual orientation in violation of Canon 4A(l) of the Texas Code of Judicial Conduct.

*See* Exhibit 1.

46.  The Commission's Public Warning of November 12, 2019, did not acknowledge or address the Texas Religious Freedom Restoration Act, and it did not respond to the arguments that Judge Hensley had made in reliance on that statute.

47.  On December 17, 2019, Judge Hensley sued the Commission and its members in state court, alleging that the Commission's interpretation of Canon 4A(1) violated her rights under the Texas Religious Freedom Restoration Act.

48.  A Travis County district court dismissed Judge Hensley's claims on jurisdictional grounds, but the Supreme Court of Texas reversed and remanded the case to

the district court. *See Hensley v. State Commission on Judicial Conduct*, 692 S.W.3d 184 (Tex. 2024).

49.  On October 24, 2025, after the Supreme Court of Texas had ruled that Judge Hensley's claims could proceed, it adopted a comment to Canon 4 of the Texas Code of Judicial Conduct to make clear that the judicial canons allow judges to recuse themselves from officiating homosexual marriage ceremonies on account of their sincerely held religious beliefs:

> It is not a violation of these canons for a judge to publicly refrain from performing a wedding ceremony based upon a sincerely held religious belief.

Supreme Court of Texas, Misc. Docket No. 25-9082 (attached as Exhibit 6). This comment disavows and repudiates the Commission's previous interpretation of Canon 4A, and it leaves the Commission without any state-law basis to act against Judge Hensley (or any other judge) who refuses to perform same-sex weddings for religious reasons.

50.  Despite this new comment to Canon 4, the Commission is insisting that Judge Hensley may not resume performing weddings for opposite-sex couples unless she also officiates marriages for homosexual couples. According to the Commission, the new comment merely allows judges with religious objections to homosexuality to refrain from performing *all* marriages, but it does not allow them to selectively opt out of performing marriages for same-sex couples:

> The comment only gives a judge the authority to "opt out" of officiating due to a sincere religious belief, but does not say that a judge can, at the same time, welcome to her chambers heterosexual couples for whom she willingly offers to conduct marriage ceremonies.

Exhibit 6 at 2–3 n.1; *see also id*. at 30 ("[T]he comment only states that judges may decide not to marry people based on a religious objection—it does not state they may also choose to marry other people if that decision results in apparent discrimination

that could 'cast reasonable doubt on the judge's capacity to act impartially as a judge[.]'").

51.  Because of the Commission's stance, Judge Hensley cannot resume performing weddings for opposite-sex couples in Texas because she continues to face threats of retaliation and discipline from the Commission if she opts out of officiating homosexual marriages on account of her Christian faith.

### FACTS RELATED TO STANDING

52.  Judge Hensley has lost more than $60,000.00 per year in supplemental income since she stopped performing marriages in 2019 in response to the Commission's threats and investigations. This past injury gives her standing to sue the commissioners for damages under 42 U.S.C. § 1983. It is fairly traceable to the commissioners' actions, and it will be redressed with an award of money damages.

53.  Judge Hensley is losing future supplemental income because the Commission continues to insist that Judge Hensley must choose between performing weddings for both opposite- and same-sex couples, despite her religious objections to homosexuality and same-sex marriage, or cease performing weddings entirely. These present-day and future injuries give her standing to sue the commissioners for declaratory and injunctive relief under 42 U.S.C. § 1983. These injuries are fairly traceable to the commissioners' actions, and they will be redressed with prospective relief.

### Claim 1: Nothing In *Obergefell* Or In The U.S. Constitution Requires Judge Hensley To Officiate At Same-Sex Marriage Ceremonies, Even If She Chooses To Officiate At Opposite-Sex Weddings

54.  It is not clear whether the commissioners believe that *Obergefell* or the Fourteenth Amendment *requires* Judge Hensley to officiate at same-sex marriage ceremonies once she decides to resume performing opposite-sex weddings.

55.  Nevertheless, Judge Hensley must first obtain a declaratory judgment that nothing in *Obergefell*—and nothing in the U.S. Constitution—requires her to officiate at same-sex marriage ceremonies before she can seek declaratory and injunctive relief on her First Amendment claims.

56.  Judge Hensley acknowledges that she must respect and follow *Obergefell*'s interpretation of the Fourteenth Amendment when deciding cases or controversies. Article III of the Constitution empowers the Supreme Court of the United States to decide "cases" and "controversies," and Judge Hensley believes that state courts and inferior federal courts should follow the Supreme Court's interpretations of the Constitution when deciding "cases" or "controversies" even if they disagree with the Supreme Court's pronouncements. *See, e.g.*, *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents.").

57.  But when Judge Hensley officiates at wedding ceremonies, she is not resolving cases or controversies, and she has no obligation to subordinate the State's marriage laws to a judicial opinion about what the Constitution means. *Obergefell* no more requires Judge Hensley to perform same-sex weddings than it requires members of the clergy do so. *See* Tex. Family Code § 2.202(a) (authorizing both clergy and judges to conduct marriage ceremonies).

58.  The Court should therefore enter a declaratory judgment that nothing in *Obergefell* or the U.S. Constitution requires state-licensed officiants—either clergy or judges—to perform same-sex marriage ceremonies, even if the officiant chooses to perform opposite-sex weddings.

### Claim 2: The Commissioners Have Violated And Are Violating Judge Hensley's Constitutional Rights Under The Free Exercise Clause

59.  Texas law expressly allows judges and other wedding officiants to refuse to perform homosexual weddings on account of their sincere religious beliefs.

60.  The state legislature specifically addressed the issue of wedding-officiant discrimination in section 2.205(a) of the Texas Family Code and declined to extend the statute's anti-discrimination protections to same-sex couples:

> A person authorized to conduct a marriage ceremony . . . is prohibited from discriminating on the basis of *race, religion, or national origin* against an applicant who is otherwise competent to be married.

Tex. Family Code § 2.205(a) (emphasis added). This statute preserves the right of wedding officiants to discriminate on the basis of "sex" and "sexual orientation" when deciding which marriages they will perform.

61.  The Supreme Court of Texas has also repudiated the Commission's interpretations of Canon 4A(1) and added a comment to Canon 4 that prohibits the Commission from using *any* of the judicial canons to discipline judges who refuse to perform same-sex weddings for sincere religion reasons:

> It is not a violation of these canons for a judge to publicly refrain from performing a wedding ceremony based upon a sincerely held religious belief.

Supreme Court of Texas, Misc. Docket No. 25-9082 (attached as Exhibit 6).

62.  Because there is no law or judicial canon that prohibits Judge Hensley from recusing herself from performing same-sex weddings on account of her Christian faith, the commissioners cannot show that their actions against Judge Hensley are rooted in a neutral, generally applicable law. *See Oregon v. Smith*, 494 U.S. 872 (1990).

63.  And because *Smith* is inapplicable, the commissioners must demonstrate that the burdens that they are imposing on Judge Hensley's free exercise of religion qualify as the least restrictive means of advancing a compelling state interest. *See Sherbert v. Verner*, 374 U.S. 398 (1963).

64.  The commissioners cannot make this showing. The State of Texas cannot have a "compelling state interest" in punishing judges who refuse to perform same-

sex marriages for sincere religious reasons when its laws and its judicial canons expressly allow judges to do this.

65. The Court should therefore order the commissioners to pay damages to Judge Hensley for violating her constitutional rights under the Free Exercise Clause, and it should permanently enjoin them from threatening or disciplining Judge Hensley over her refusal to perform homosexual weddings.

## Claim 3: The Commissioners Have Violated And Are Violating Judge Hensley's Constitutional Rights Under The Speech Clause

66. Judges have First Amendment rights to free speech and expressive conduct. *See Republican Party of Minnesota v. White*, 536 U.S. 765 (2002).

67. Officiating a wedding ceremony is speech, and the commissioners have violated and continue to violate Judge Hensley's constitutional free-speech rights by threatening her with investigation and discipline if she performs marriages for opposite-sex couples while refusing to officiate at homosexual-marriage ceremonies that remain illegal under the laws of Texas.

68. The Court should therefore order the commissioners to pay damages to Judge Hensley for violating her constitutional rights under the Speech Clause, and it should permanently enjoin them from threatening or disciplining Judge Hensley over her refusal to perform homosexual weddings while continuing to perform marriages for opposite-sex couples.

## Claim No. 4: The Courts Should Overrule *Obergefell* And Declare That Homosexual Marriage Is Not A Constitutional Right

69. The Commission's bullying of Judge Hensley and its menacing behavior toward other Christian judges is the direct result of the Supreme Court's pronouncement in *Obergefell* that homosexual marriage is a constitutional right, and that anyone who opposes homosexual marriage is therefore an enemy of the Constitution. This has emboldened activists and politicians to embark on a campaign of intimidation

against individuals and institutions who dare to express the belief that marriage is between one man and one woman—even when the expressions of this belief are supposed to be protected by the Speech Clause and the Free Exercise Clause. The cities of San Antonio and Buffalo have banned Chick-fil-A from operating in their airports because it gave money to Christian organizations that oppose same-sex marriage, including the Salvation Army and the Fellowship of Christian Athletes. A presidential candidate called for revoking the tax-exempt status of every church in the United States that opposes same-sex marriage. *See* Patrick Svitek, *Beto O'Rourke Says Religious Institutions Should Lose Tax-Exempt Status If They Oppose Gay Marriage*, Texas Tribune (Oct. 11, 2019), available at https://bit.ly/32ohaxe (last visited on December 19, 2025). And at oral argument in *Obergefell v. Hodges*, 576 U.S. 644 (2015), the Solicitor General of the United States acknowledged that religious institutions that refuse to recognize same-sex marriage may be jeopardizing their tax-exempt status. *See* Oral Argument Transcript, *Obergefell v. Hodges*, No. 14-556, at 36–38 (U.S. Apr. 28, 2015).

70.  The Supreme Court has given credibility to these attacks on religious freedom by inventing a constitutional right to homosexual marriage, which is enabling and encouraging activists to paint Christian individuals and institutions that oppose same-sex marriage as un-American and morally equivalent to racists.

71.  Yet there is nothing in the language of the Constitution that even remotely suggests that homosexual marriage is a constitutional right, and the *Obergefell* opinion failed to identify any provision of constitutional text that establishes this supposed constitutional right to homosexual marriage.

72.  Instead, *Obergefell* announced that judges may recognize and enforce "fundamental rights" that cannot be found anywhere in the Constitution's text, so long as the judge applies "reasoned judgment" when deciding what those atextual "fundamental rights" should be. *See Obergefell*, 576 U.S. at 664.

73.  The Supreme Court's subsequent ruling in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), repudiates the "reasoned judgment" test for determining "fundamental rights" and prohibits judges from recognizing "fundamental rights" that are unmentioned in constitutional text unless those rights are "deeply rooted in this Nation's history and tradition." *Id*. at 231.

74.  *Dobbs* did not purport to overrule *Obergefell*, but its rationale is incompatible with the idea that homosexual marriage is a "fundamental right." The court-invented right to homosexual marriage—like the court-invented right to abortion—is not "deeply rooted in this Nation's history and tradition," so *Obergefell* had no constitutional justification for imposing same-sex marriage on all 50 states.

75.  *Obergefell*'s claim that a court may recognize and impose "fundamental rights" that have no basis in constitutional text or historical practice—and that rest on nothing more than a judge's purported exercise of "reasoned judgment"—reflects a lawless and unconstitutional understanding of judicial power. It allows judges to create and impose new constitutional rights based solely on their personal beliefs, so long as they claim to be exercising "reasoned judgment" when doing so. *See, e.g.*, *Obergefell*, 576 U.S. at 703 (Roberts, C.J., dissenting) ("[T]oday's decision rests on nothing more than the majority's own conviction that same-sex couples should be allowed to marry").

76.  The Constitution makes no allowance for the Supreme Court to invent constitutional rights that have no grounding in constitutional text or historical practice, and *Obergefell* violates the Tenth Amendment and the Republican Form of Government Clause by subordinating state laws to the policy preferences of unelected judges. The members of the *Obergefell* majority may have believed very strongly that same-sex marriage should be allowed in all 50 states as a matter of policy, but that is not a basis on which a court may enjoin the enforcement of a duly enacted statute.

77. The *Obergefell* decision also flouted the precedent of the Supreme Court. It disregarded *Washington* v. *Glucksberg*, 521 U.S. 702 (1997), by recognizing a "fundamental right" to same-sex marriage, despite the fact that a right to same-sex marriage is not "deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 721 (1997). *Obergefell* also overruled *Baker v. Nelson*, 409 U.S. 810 (1972), which had held that the idea of a constitutional right to same-sex marriage was so frivolous as to not even present a federal question. *See Obergefell v. Hodges*, 576 U.S. at 675 ("*Baker v. Nelson* must be and now is overruled").

78. The Supreme Court's membership has changed since *Obergefell*. Justice Kennedy, the author of *Obergefell*, has been replaced by Justice Kavanaugh, and Justice Ginsburg, who joined the majority in *Obergefell*, has been replaced by Justice Barrett.

79. So it is far from clear that five members of the current Supreme Court will endorse *Obergefell*, and *Dobbs* has already repudiated *Obergefell*'s "reasoned judgment" test for identifying "fundamental rights." And it is hard to believe how any member of the Supreme Court could credibly defend a decision to adhere to *Obergefell* on *stare decisis* grounds when *Obergefell* so flagrantly disregarded *stare decisis* by overruling *Baker v. Nelson* and refusing to follow *Glucksberg*'s test for identifying "fundamental rights."

80. Judge Hensley therefore seeks a declaratory judgment that: (a) There is no constitutional right to same-sex marriage; (b) The federal judiciary has no authority to recognize or invent "fundamental" constitutional rights based on a "reasoned judgment" test; and (c) The Supreme Court's ruling and opinion in *Obergefell* violate the Tenth Amendment and the Republican Form of Government Clause by subordinating state law to the policy preferences of unelected judges.

81. The Supreme Court has instructed the lower courts to follow its precedents until the justices themselves overrule the disputed decision. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its

precedents."). Judge Hensley therefore wishes to preserve this claim for an eventual petition (or cross-petition) for certiorari in the Supreme Court.

## DEMAND FOR JUDGMENT

82.  Judge Hensley respectfully requests that the Court:

a.  declare that the commissioners have violated and are violating Judge Hensley's constitutional rights under the Free Exercise Clause and the Speech Clause;

b.  enjoin the commissioners in their official capacities from investigating or disciplining Judge Hensley over her refusal to officiate homosexual marriage ceremonies, even if she resumes performing weddings for opposite-sex couples;

c.  award Judge Hensley damages under 42 U.S.C. § 1983 against the commissioners in their individual capacities for the income she lost when she stopped performing weddings in response to the commissioners' investigations and threats; and

d.  award Judge Hensley court costs and reasonable attorneys' fees under 42 U.S.C. § 1988(b).

e.  award all other relief that the Court may deem just, proper, or equitable.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: December 19, 2025                 *Counsel for Plaintiff*